AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
### Western District of Washington

| | | |
|---|---|---|
| United States | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.    12-cv-02826 (DLC) |
| Apple Inc., et al. | ) | |
| | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | Southern District of New York     ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Amazon.com, Inc.
      c/o Michael Kipling, Esq. Kipling Law Group 3601 Fremont Ave. North, Suite 414 Seattle, WA  98103

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: See Exhibit A.

| Place:   Lane Powell PC <br>        1420 Fifth Avenue, Suite 4100 <br>        Seattle, WA  98101  / Attn:  Christopher Wells, Esq. | Date and Time: <br><br>      08/06/2012 10:00 am |
|---|---|

   ☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:    <u>07/06/2012</u>

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*    <u>Apple Inc.</u>
_____ , who issues or requests this subpoena, are:

Christopher Wells, Esq., Lane Powell PC, 1420 Fifth Avenue, Suite 4100, Seattle, WA  98101
(206) 223-7084, wellsc@lanepowell.com

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   12-cv-02826 (DLC)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)*    Amazon.com, Inc. _____

was received by me on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>Plaintiff, )<br><br>v. )<br><br>APPLE INC., et al. )<br><br>Defendants. ) | Civil Action No.: 12-cv-02826 (DLC) |
| IN RE ELECTRONIC BOOKS ANTITRUST LITIGATION )<br><br>This document relates to:<br><br>ALL ACTIONS ) | Civil Action No.: 11-md-02293 (DLC)<br><br>CLASS ACTION |
| THE STATE OF TEXAS;<br>THE STATE OF CONNECTICUT; et al. )<br><br>Plaintiffs, )<br><br>v. )<br><br>PENGUIN GROUP (USA) INC., et al., )<br><br>Defendants. ) | Civil Action No.: 12-cv-03394 (DLC) |

## EXHIBIT A TO SUBPOENA TO AMAZON.COM, INC.

## DEFENDANTS' REQUESTS FOR DOCUMENTS

1.     All documents provided by You to the DOJ or received by You from the DOJ and all communications between You and the DOJ, and any documents relating to those communications, whether or not in response to a formal demand or request, in connection with (i) the Investigation, (ii) any other inquiry related to eBooks or physical books, (iii) Apple, (iv) the DOJ Litigation, or (v) any settlement or proposed settlement of the DOJ Litigation.

2.     All documents and communications relating to the impact of (i) the DOJ Litigation, (ii) the proposed settlement of the DOJ Litigation, or (iii) the Class Action Litigation on Your business and/or the market for eBooks.

3.     All documents provided by You to any Regulator or received by You from any Regulator and all communications between You and any Regulator, and any documents relating to those communications, relating to (i) eBooks or physical books or (ii) Apple, including but not limited to documents and communications relating to investigations or lawsuits filed by any state Attorney General relating to eBooks.

4.     All documents and communications relating to Your pricing of eBooks and eReaders, including without limitation (i) price lists, (ii) pricing plans, (iii) pricing policies, (iv) pricing forecasts, (v) pricing strategies, (vi) pricing analyses, and (vii) pricing algorithms.

5.     All documents concerning Your consideration of or decision to price eBooks below Your wholesale acquisition cost, including without limitation documents relating to (i) Your determination of which titles to price below cost, (ii) the amount of your negative gross margins on such titles, (iii) the actual or potential impact of pricing titles below cost on your business (including businesses other than Your book business), including without limitation any associated potential revenues, profits, and other benefits, (iv) the accounting provision for such losses, (v) the effects of below-cost pricing on the products priced below cost and on competitors, (vi) documents sufficient to show Your losses from below-cost pricing on quarterly

basis, (vii) alternatives to below-cost pricing, and (vii) documents sufficient to show how You used the funds that previously were used to fund below-cost pricing.

6.      All documents and communications relating to Your pricing of physical books, including without limitation (i) price lists, (ii) pricing plans, (iii) pricing policies, (iv) pricing forecasts, (v) pricing strategies, (vi) pricing analyses, (vii) pricing algorithms, and (viii) documents concerning the pricing of physical books or books in any other format that relate to, mention, analyze, or discuss the pricing of eBooks.

7.      All documents and communications relating to Your pricing algorithms, including documents sufficient to understand (i) how frequently You changed Your pricing and (ii) whether the changes were input by human decision-making or were automated.

8.      All documents and communications relating to co-op funding or any other type of promotional support for eBooks.

9.      All agreements between You and the Publishers or any other publisher relating to the purchase, sale, or distribution of eBooks which were in effect prior to the implementation of any Agency Model contracts (and drafts thereof) between You and the Publishers.

10.     All documents and communications relating to Your negotiations with the Publishers or any other publisher relating to the implementation of an Agency Model for the purchase, sale, or distribution of eBooks, including without limitation any Agency Model contracts (and drafts thereof) between You and the Publishers or any other publisher.

11.     All documents and communications relating to the actual or potential use of minimum prices or price tiers in connection with the purchase, sale, or distribution of eBooks.

12.     All documents and communications relating to Your threatened or actual refusal to deal with any of the Publishers or any other publisher who proposed or suggested the Agency Model for the purchase, sale, or distribution of eBooks.

13.     All documents and communications concerning your decision to use the Agency Model for the purchase, sale, or distribution of eBooks.

14.     All documents provided by You to Random House or received by You from Random House relating to the Investigation.

15.     All communications between You and Random House relating to the Investigation, Apple, or to any other publisher, and all documents relating to those communications.

16.     All communications between You and Random House, to the extent not already provided, relating to any decision, discussion, or negotiation with respect to Amazon's distribution of Random House books on an Agency Model or any other business model.

17.     All communications between You and any of the Publishers or any other publisher relating to Apple's entry into the eBook or eReader market or Apple's eBook or eReader business after such entry, and all documents relating to those communications.

18.     All documents and communications relating to Apple's iPad, iBooks, or iBookstore, including without limitation Apple's actual or potential entry into the eBook market.

19.     All documents and communications relating to Your withholding of marketing, promotion, advertising, or distribution of the Publishers' titles or any other publishers' titles.

20.     All documents and communications relating to actual or potential windowing of eBooks by the Publishers.

21.     All documents and communications relating to Your plans for eBooks and eReaders, including without limitation business plans, short term and long-range strategies and objectives; pricing strategies; budgets and financial projections; expansion or retrenchment plans; research and development efforts; and presentations to management committees, executive committees, and boards of directors.

22.     All strategy documents concerning the relationship between Your eBook businesses and Your businesses relating to physical books and book publishing (including the actual or potential publishing of both physical books and eBooks), including without limitation documents concerning the relationship of those businesses with respect to pricing.

4

23. All documents and communications relating to the relationship between the pricing of eBooks and the pricing of the Kindle.

24. All documents and communications, including without limitation market studies, forecasts, and surveys, relating to (i) the relationship between Your pricing of eBooks and/or physical books and the sales of other products sold by You, including the Kindle, or (ii) the relationship between Your pricing of eBooks and/or physical books and the sales of other products sold by other retailers, including eReaders.

25. All documents and communications, including without limitation market studies, forecasts and surveys, relating to (i) the relationship between Your sales of eBooks and eReaders and the prices of other products sold by You, or (ii) the relationship between Your sales of eBooks and eReaders and the prices of other products sold by other retailers.

26. All documents and communications, including without limitation market studies, forecasts, and surveys, relating to Amazon's $9.99 pricing of certain eBooks (including without limitation those whose titles appear(ed) on the *New York Times* bestseller list) and: (i) the sales of physical copies of such books, (ii) the timing of sales of such titles, whether as an eBook or a physical book, and (iii) the total number of sales of such titles, whether as an eBook or as a physical book.

27. All documents relating to actual or potential competition in the sale of eBooks or eReaders, including without limitation market studies, forecasts and surveys, and all other documents relating to (i) Your market share or Your competitive position, (ii) the market share of any other company engaged in the sale of eBooks or eReaders, (iii) the share of any book publisher in the market relating to book publishing (whether relating to the publishing of physical books or eBooks), (iv) the relative strength or weakness of any other companies engaged in the sale of eBooks or eReaders, (v) supply and demand conditions, (vi) Your attempts to win customers from other eBook or eReader sellers and the losses of Your customers to other eBook or eReader sellers, (vii) the prices at which other sellers sell eBooks or eReaders, (viii) the margins earned by You or any other eBook or eReader seller, (ix) any actual or potential effect

5

on the supply, demand, cost, or price of eBooks or eReaders as a result of competition from any other eBook or eReader seller, (x) any actual or potential effect on the supply, demand, cost, or price of eBooks as a result of competition from physical books, (xi) actual or potential competitors, including but not limited to Apple and Barnes & Noble, and (xii) the actual or potential impact on eBook competition or competitors of Your businesses relating to physical books and book publishing (including the actual or potential publishing of both physical books and eBooks).

28.     All documents and communications relating to any projections of growth in the sales of eBooks, physical books, or eReaders including those offered by Amazon (the Kindle), Apple (the iPad), and Barnes & Noble (the Nook).

29.     All documents and communications, including without limitation market studies, forecasts, and surveys, relating to Your projection of how the eBook or eReader markets might evolve, including without limitation Your expectations relating to revenues, prices, market shares, margins, the potential entry or exit of other companies from such markets, and the business strategies of such companies.

30.     All documents and communications relating to Your sales, revenues, budgets, profits, gains, costs, losses, or margins relating to eBooks or the Kindle.

31.     All documents and communications relating to Your actual or potential plans to publish eBooks, including without limitation documents and communications relating to Kindle Digital Publishing (KDP) and Amazon's use of Exclusives.

32.     All documents and communications relating to pricing MFNs, content MFNs, or any other type of MFNs related to eBooks or physical books.

33.     All documents and communications relating to the Agency Model as it relates to Amazon's publishing business, including but not limited to agreements using the Agency Model.

34.     All documents and communications relating to complaints You made to any book publisher relating to any violation of the contract terms of any agreement for the purchase, sale,

or distribution of eBooks entered into between You and any publisher, including without limitation violations relating to pricing MFNs, content MFNs or any other type of MFNs.

35.     All documents and communications relating to analyses of the strengths or weaknesses, pricing, market, and functionality of any devices used to read eBooks, including but not limited to devices offered by Amazon (the Kindle), Apple (the iPad), and Barnes & Noble (the Nook).

36.     All documents and communications relating to file formats for eBooks, including without limitation Your consideration of and decision to (i) use a proprietary eBook format or (ii) not support the ePub format.

37.     All communications with lawyers representing plaintiffs in the Class Action Litigation, and any documents relating to those communications.

38.     All consumer research or surveys, focus group studies (either internal or third party) relating to consumer usage or purchasing patterns for books (eBooks and/or physical books) or eReaders.

39.     Any documents or studies relating to the extent to which consumers browse in brick-and-mortar stores and/or purchase books (either eBooks or physical) on-line.

40.     Any documents relating to consumer usage of the Amazon book price check applications for mobile phones.

41.     A useable copy of each electronic or other database or data set used or maintained by the company that contains information relating to the company's ebook distribution, including:  (a) products and product codes; (b) sales; (c) list prices; (d) retail prices; (e) dates associated with list prices and retail prices; (f) marketing and promotions; (g) margins; (h) costs, including production costs, distribution costs, standard costs, expected costs, and opportunity costs; (i) patents or other intellectual property; (j) research or development projects; or (k) customers, including any accompanying data dictionary, and any software product or platform required to access the database or data set.

42.    For each database or data set that contains cost or margin information, one copy of each regularly produced (no more frequently than in four week periods) report generated using that database and any documentation that defines, describes, or explains the calculation in any terms, measures, or aggregations appearing on the materials provided.

43.    Sales data and metadata for books, including:

(a)    all identifiers of the eBook and equivalent print versions of the book (*e.g.*, SKU, ISBN);

(b)    name of the author;

(c)    title of the eBook;

(d)    name of the eBook's publisher and imprint;

(e)    release date of the eBook and, if different, of all print versions of the book (*e.g.*, hardcover print, trade paperback print, mass market print);

(f)    genre categorization and any other identifier that describes the form, style, attributes, or subject matter of the eBook;

(g)    wholesale price on a daily basis (net of all discounts, rebates received);

(h)    retail price on a daily basis (for all eBook titles sold on agency model, retail price set by publisher, actual price at which sold (if different), commission rate, and commission payment);

(i)    digital list price on a daily basis;

(j)    the date on which Amazon began selling the book on the Agency Model (or by publisher);

(k)    dollar and unit sales on a daily basis;

(l)    dollar and unit pre-sales of the eBook on a daily basis;

(m)    list price(s) of all equivalent print versions of the book on a daily basis;

(n)    retail price, wholesale price, and dollar and unit sales of all print versions of the book on a daily basis;

(o)     retail price, wholesale price, and dollar and unit sales for any pre-sales of all print versions of the book on a daily basis;

(p)     any algorithms or other computer programs used to determine retail prices of any version of the book (eBook or physical book);

(q)     whether the title was on the *New York Times* best seller list, and if so, during what time period;

(r)     cost data detailing all costs associated with selling particular the title, including joint costs for physical and e-books and costs specific to format;

(s)     any available information regarding any form of promotional support, including agreements with publishers for favorable placement on Amazon.com or Kindle web-site;

(t)     any exclusive content or special promotions of the eBook on a daily basis;

(u)     type and placement of promotion of the eBook on a daily basis;

(v)     success of each promotion of the eBook on a daily basis, including number of clicks on each promotion and number of sales made through clicks of each promotion;

(w)     any exclusive content or special promotions of equivalent print versions of the book on a daily basis;

(x)     type and placement of promotion of equivalent print versions of the book on a daily basis; and

(y)     success of each promotion of equivalent print versions of the book on a daily basis, including number of clicks on each promotion and number of sales made through clicks of each promotion.

## DEFINITIONS AND INSTRUCTIONS

Unless the context indicates otherwise, the following definitions and instructions shall apply to these requests:

1.    "Person" means any natural person, corporation, association, organization, firm, company, partnership, joint venture, trust, estate, or other legal or governmental entity (*e.g.*, the U.S. Department of Justice, etc.), whether or not possessing a separate juristic existence.

2.    "You" or "yours" means Amazon.com, Inc., and any of its parents, subsidiaries, affiliates, partners, directors, shareholders, officers, employees, agents, assigns or any predecessors or successors in interest, or any person or entity over which Amazon.com, Inc. exercises control, or who exercises control over, or is in common control with them.

3.    "All" includes the term "each," or "any," and vice versa. The singular shall include the plural, and the disjunctive shall include the conjunctive, and vice versa, such that each document request calls for the production of the greatest number of documents.

4.    The terms "and" and "or" shall be construed conjunctively or disjunctively to bring within the scope of these requests any and all information which might otherwise be construed as outside their scope. The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun so used, and vice versa; and the use of any tense of any verb shall be considered to include also within its meaning all other tenses of the verb so used.

5.    "Refer" or "relate" or "referring" or "relating" means constitute, comprise, reflect, concern, regard, record, memorialize, embody, discuss, describe, evaluate, consider, review, or report on the subject matter of the document request and also refers to documents reviewed in conjunction with, or created, generated, or maintained as a result of the subject matter of the request.

6.    "The DOJ" means the United States Department of Justice, individually, its employees, Commissioners, attorneys, accountants, economists, staff, consultants, experts, agents and representatives, and specifically includes any third-party representative or agent, wherever located, acting or purporting to act on its behalf.

7.    "Regulator" means any federal or state governmental agency, including without limitation the DOJ, the Federal Trade Commission, any state Attorney General, any member of

the United States Congress, the European Commission, the United Kingdom's Office of Fair

Trade, or any European Union member state competition agency, individually or collectively,

and their employees, Commissioners, attorneys, accountants, economists, staff, consultants,

experts, agents and representatives, and specifically includes any third-party representative or

agent, wherever located, acting or purporting to act on their behalf.

8.      "Apple" means Apple Inc. its parents, subsidiaries, affiliates, partners, directors,

shareholders, officers, employees, agents, assigns or any predecessors or successors in interest,

or any person or entity over which Apple Inc. exercises control, or who exercises control over, or

is in common control with them.

9.      "The Publishers" means

- Hachette Book Group, Inc.,
- HarperCollins Publishers L.L.C.,
- Verlagsgruppe Georg Von Holtzbrinck GMBH,
- Holtzbrinck Publishers, LLC d/b/a Macmillan,
- The Penguin Group, a Division of Pearson PLC,
- Penguin Group (USA), Inc.,
- Simon & Schuster, Inc., and
- Random House, Inc.

individually or collectively, and their parents, subsidiaries, affiliates partners, directors,

shareholders, officers, employees, agents, assigns or any predecessors or successors in interest,

or any person or entity over which they exercise control, or who exercises control over, or is in

common control with them.

10.     "Barnes & Noble" means Barnes & Noble, Inc., its parents, subsidiaries,

affiliates, partners, directors, shareholders, officers, employees, agents, assigns or any

predecessors or successors in interest, or any person or entity over which Barnes & Noble, Inc.

exercises control, or who exercises control over, or is in common control with them.

11.  "Random House" means Random House, Inc., its parents, subsidiaries, affiliates, partners, directors, shareholders, officers, employees, agents, assigns or any predecessors or successors in interest, or any person or entity over which Random House, Inc. exercises control, or who exercises control over, or is in common control with them.

12.  "Investigation" means the DOJ's investigation of Apple and certain of the Publishers, whether before or after a formal investigation commenced, which resulted in the filing of the DOJ's civil lawsuit against Apple and certain of the Publishers, captioned, *United States of America v. Apple, Inc., et al.*, Case No. 12-cv-02826 (DLC) (S.D.N.Y. Apr. 11, 2012).

13.  "DOJ Litigation" means the lawsuit filed by the DOJ against Apple and certain of the Publishers captioned *United States of America v. Apple, Inc., et al.*, Case No. 12-cv-02826 (DLC) (S.D.N.Y. Apr. 11, 2012).

14.  "Class Action Litigation" means the lawsuit captioned *In re Electronic Books Antitrust Litigation*, Case No. 11-md-02293 (DLC) (S.D.N.Y.).

15.  "eBook" means any book sold to consumers in electronic form and read on a variety of electronic devices, including dedicated eReaders, multipurpose tablets, smartphones, and personal computers.

16.  "eReader" means any device on which eBooks can be purchased and/or read, including without limitation the Kindle, Nook, and iPad.

17.  "iPad" means Apple's tablet device, including all versions of the iPad hardware, including without limitation the iPad 2 and the new iPad.

18.  "Kindle" means Amazon's eReader device, including all versions of the Kindle hardware, including without limitation Kindle First Generation, Kindle 2, Kindle Keyboard, Kindle Touch, Kindle DX, and Kindle Fire.

19.  "Nook" means Barns & Noble's eReader device, including all versions of the Nook hardware, including without limitation Nook Simple Touch, Nook Color, and Nook Tablet.

20.  "Agency Model" means a distribution and sales model whereby the publishers could set retail prices by contract and retailers would act as the publishers' sales agents.

21. "Exclusive" means a contract provision that gives Amazon the sole right to sell and distribute eBooks published by Amazon's Kindle Digital Publishing (KDP).

22. "MFN" means most favored nation provision in a contract.

23. "Communicate" or "communication" refers to every manner or means of disclosure, transfer, or exchange of information orally or in writing.

24. "Document" is given the broadest possible meaning in accordance with Rule 34 of the Federal Rules of Civil Procedure, and is meant to include, at least, all writings as defined in Fed. R. Evid. 1001, correspondence, communications, notes, letters, memoranda, drawings, graphs, charts, photographs, discs, computer recordings, electronic mail, spreadsheets, databases, and any other data compilations from which information can be obtained.

25. For each request, You are to produce entire documents including all attachments, enclosures, cover letters, memoranda, and appendices. Copies that differ in any respect from an original (because, by way of example only, handwritten or printed notations have been added) are treated as separate documents and should be produced separately. A request for a document shall be deemed to include a request for any and all transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document, in addition to the document itself.

26. Documents stored in electronic form or format of any kind are to be produced in their original and native format, including all "metadata" or other electronic components of the information concerning or comprising such documents, and all pages should be Bates numbered.

27. If any document or thing requested was at one time in existence, but has been lost, discarded or destroyed, identify each such document or thing by date, type, and subject matter, describe the circumstances under which the document was lost, discarded or destroyed, and identify each person with knowledge of its subject matter and of the circumstances under which it was lost, discarded, or destroyed and, if the documents are destroyed, state the reason for such destruction.

28. If the production of any document requested herein is withheld on the ground of any claim of privilege or attorney work-product, please provide a statement detailing the claim of

13

privilege and all facts relied on to support that claim, including the document date, author(s), recipient(s), type (*e.g.*, memo, interview notes), subject matter, its present location, and all information required by the Federal Rules of Civil Procedure.

      29.     If a portion of an otherwise responsive document contains information subject to a claim of privilege, those portions of the document subject to the claim of privilege shall be redacted from the document and the rest of the document shall be produced. Information regarding the portion that is redacted must be included in the privilege log described in Paragraph 21 of the Definitions and Instructions.

      30.     These requests cover all documents in Your possession, custody, or control.

      31.     These requests are continuing in nature, and You must supplement Your responses pursuant to Federal Rule of Civil Procedure 26(e).

      32.     Unless otherwise indicated, the timeframe for the requests is November 1, 2007 to the present.